## THOMPSON v. OIL REFINERIES, Inc., et al.

### No. 2805.

District Court, W. D. Louisiana. Shreveport Division.

Jan. 10, 1939.

Jos. W. Bailey, Jr., and Lyle Saxon, both of Dallas, Tex., and Lewell C. Butler, of Shreveport, La., for plaintiff.

Hussey & Smith and Lee & Lee, all of Shreveport, La., and McGown & McGown and H. L. Logan, Jr., all of Fort Worth, Tex., for defendants.

DAWKINS, District Judge.

Plaintiff is the receiver of a state court, of properties belonging to an estate known as the Big Indian Syndicates, and brought this suit to recover of the defendants a large sum of money alleged to be due because of withdrawal from a lease belonging to said estate of more than 300,000 barrels of crude oil, which he charges was done tortiously, without his knowledge and for which nothing was paid. He further charges that the defendants conspired with certain employees of the receiver in the unauthorized taking of said oil and have endeavored to cover up their tortious acts through the formation of numerous entities or corporations. From the inception, plaintiff has met with serious obstructions in getting the information which it is alleged is necessary to show the relation of the defendants.

Upon application and hearing, leave was granted to take the testimony of several witnesses, among them that of J. E. Marshall, under Rule 26(b), and to produce certain documents under Rule 34 of the new rules of civil procedure, 28 U.S.C.A. following section 723c. In the course of the taking of said depositions, the said Marshall was interrogated as to whether any oil had been taken from the lease under plaintiff's control, and testified that it had not, but that the defendants purchased their oil through a concern known as Industrial Brokerage Company, which was only another name for one S. H. Myers; that all the oil handled by said Industrial Brokerage Company came from leases five miles or more from the lease in question; that there was carried on the books of the defendants, or some of them, the name of Apex Pipe Line Company, and that all of the oil came from leases along what had been its line but in reality was the property of the De Soto Crude Oil Purchasing Company; that the records of the Apex Pipe Line Company would show the purchase of oil from these leases; that he knew the names of some of the purchasers and by referring to said records could give those of all of them, but refused to name those he could recall, or to refresh his memory from the books and records which were in the office where he was testifying to enable him to furnish the full information sought by the deposition. This refusal was upon the advice of counsel for the defendants, for the reason that the witness had denied any of the oil handled by the defendants had come from the lease of the plaintiff, hence the information sought was immaterial, and would injure the business of the defendants by exposing the names of their customers. It also appeared that he could, by reference to the records in the office, give the names of the owners of the leases, the amounts and prices paid for oil taken therefrom, as well as much other information the plaintiff was seeking.

The depositions tended to show that, until the validity of proration under the laws of Texas and final sustaining of the Connally Act, 15 U.S.C.A. § 715 et seq., the defendants, or some of them, had been engaged in producing large quantities of excess oil and running it, contrary to the provisions of those laws, and for which purposes they had organized a number of corporations or entities and made reports to the taxing department of the State of Texas, in a manner to cover up their real transactions. In this situation, plaintiff was and is confronted with a very difficult problem in tracing the oil alleged to have been taken from the property of the estate which he represents, as nearly all of the information is in the hands of these defendants. The purpose of this investigation is to obtain information which can be checked with that in the possession of others to establish plaintiff's contention that the defendants, in one way or another, were the beneficiaries of the oil alleged to have been wrongfully taken from plaintiff's lease; and considering the matter from the standpoint of both sides, I do not feel that any serious inconvenience, injury or embarrassment can be done to the defendants in compelling them, their officers, employees, etc., to answer pertinent questions which may tend to show where the oil they were handling under the several names, came from, so that plaintiff may, as stated, check it against outside sources to determine if any part was from the lease in question.

The auditor which this court previously authorized would deal mainly with accounts and records and would not be permitted to ask questions, particularly under oath, to develop any facts to clear up those records or to disclose any matter which did not clearly appear therein.

 I think the new rules require a liberal construction to the end that a situation, such as has been charged in this case, may be cleared up. If the allegations are sustained, it will simply be the consequence of defendants' own activities, and, if not, then they will be relieved from the implications of this suit. At this time I do not see the necessity of appointing a master.

 The witness J. E. Marshall, as well as any other who may be called to testify, is, therefore, directed to answer the questions propounded by plaintiff's counsel, if necessary by reference to the books, records and documents, and if required, to permit the photographing thereof for use by the plaintiff on the trial.